**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DAVID EARL SHERO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No: 05-CV-0137-CVE-PJC |
| ) | |
| **CITY OF GROVE, OKLAHOMA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: Robert Nold's Special Appearance, Motion to Dismiss and Brief in Support (Dkt. # 22); Defendants' Motion to Dismiss and Brief in Support (Dkt. # 23); and Defendants' Opposed Motion to Amend Affirmative Defenses (Dkt. # 75).

**I.**

Plaintiff Earl Shero ("Shero") is a resident of Delaware County, Oklahoma and regularly attends the City of Grove ("the City") city council meetings. On November 17, December 1, and December 15, 2003, Shero requested a "council packet" from the city clerk, Ivonne Buzzard, and his requests were granted. On January 2, 2004, Shero requested a council packet for the January 6, 2004, city council meeting. Buzzard denied his request, but Shero attended the January 6 meeting without a council packet. At the meeting, Shero addressed the city council and stated that he did not receive a council packet. He informed the city council that he believed the denial amounted to a violation of the Oklahoma Open Records Act, Okla. Stat. tit. 51, § 24A.1 et seq. ("OORA"). Shero also told the council that meetings between city officials and potential buyers of the Grove Civic Center violated the Oklahoma Open Meeting Act, Okla. Stat. tit. 25, § 301 et seq. Subsequently, on January 16, 2004, Shero's request for a council packet was denied.

Shero alleges that city council members David Helms, Randy Jobe, David Adzigian, and Charles Rowe, and other city officials, including former mayor Robert Nold, city manager William Galletly, council member Carolyn Nuckolls,[1] and city attorney Dorothy Parker, sought to retaliate against Shero for his remarks at the January 6 meeting. On January 30, 2004, Shero filed a written request for public records with the City, and his request was denied on the same day. Shero claims that, while he was waiting, Buzzard provided a council packet to another citizen. The City filed a declaratory judgment action against Shero in state court on February 2, 2006, seeking a declaration that Shero could not gain access to council packets under the OORA, and sought a protective order against Shero. Shero filed an answer and counterclaim against the City, alleging that the City violated the OORA by denying his requests for information. The court denied the City's motion for a protective order and held that the City did not have standing to file a declaratory judgment action against Shero.[2]

Shero continued to request information from the City and his requests were repeatedly denied. On March 2, 2004, Shero made a written request for copies of any offers to purchase the Grove Civic Center, and this request was denied. Shero addressed the city council at its March 16, 2004 meeting, but the mayor placed a time limit on Shero. He claims that there were no other speakers present at the meeting. On April 8, 2004, the state court granted Shero's claim under the OORA and found that Shero was entitled to the information contained in the council packets, but

---

[1] Late in January 2004, Nold resigned as mayor and was replaced by Nuckolls. It is not clear from the complaint or the motion to dismiss if Nuckolls still holds this position.

[2] Parker filed the lawsuit before the city council could pass a resolution authorizing the lawsuit. Consequently, the state court found that the City lacked standing to prosecute a declaratory judgment action.

2

the City could redact any confidential information contained in the packet. The court enjoined the city from denying future requests for similar information and also awarded Shero $27,949 in attorney's fees.

Shero alleges that these events were followed by the local newspaper and his employer learned about Shero's dispute with the City. Shero states that his supervisor gave him a choice between dropping his claims against the City or losing his job. According to the complaint, Shero continued with his lawsuit and was terminated from his job. Shero claims this harmed his reputation in the community. Shero brings claims under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 et seq. ("GTCA").

## II.

Defendant Robert Nold claims that he should be dismissed as a party to this lawsuit because plaintiff failed to properly serve him under Fed. R. Civ. P. 4(e)(2). Nold was formerly the mayor of Grove, but left the Grove area upon resigning as mayor. Plaintiff served Nold by having a process server personally deliver a copy of the complaint and summons to Nold's daughter, Melissa Glenn, at 11207 South Bay Lane, Austin, Texas. Nold has submitted an affidavit which states that this is not his permanent address, nor does he own the property at that address. Plaintiff filed a "supplemental" response to defendant's motion one year after defendant's motion was filed, but plaintiff never filed an original response which could be supplemented.[3] Plaintiff's response is untimely and the Court will not consider it when ruling on defendant's motion to dismiss. See LcvR 7.2(f).

---

[3] Plaintiff filed a response to the motion to dismiss (Dkt. # 27) filed by other defendants in this case, but not to defendant Nold's motion.

The Federal Rules of Civil Procedure allow for any party to be served "by leaving copies [of the summons and complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion residing therein." Fed. R. Civ. P. 4(e)(2). The Tenth Circuit has defined the term "usual place of abode" to mean the place "where he is actually living, except for temporary absences, at the time service is made." Rosa v. Cantrell, 705 F.2d 1208, 1214 (10th Cir. 1982). Plaintiff has the burden to show that service was affected at defendant's usual place of abode. Campbell v. Bartlett, 975 F.2d 1569, 1575 (10th Cir. 1992) (citing Systems Signs Supplies v. United States Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)). However, the concept is flexible and the court's determination of the defendant's usual place of abode depends on the facts of each case. Campbell, 975 F.2d at 1774-75. If plaintiff produces evidence showing that he delivered the summons and complaint to defendant's usual place of abode, this shifts the burden to the defendant to prove by "strong and convincing proof" that service was insufficient. Nikwei v. Ross School of Aviation, Inc., 822 F.2d 939, 941 (10th Cir. 1987).

Plaintiff has the burden to prove that service was proper under Fed. R. Civ. P. 4, and he has failed to provide a timely response. The only evidence before the Court is the affidavit submitted by Nold which states that the Austin, Texas address is not his usual place of abode and that he has never intended to establish a domicile there. The Court finds that plaintiff has not met his burden to establish that he served defendant at his usual place of abode, and defendant Nold's motion to dismiss should be granted.

### III.

Other defendants assert in their motion to dismiss (Dkt. # 23) that plaintiff's claims are barred by the doctrine of res judicata, because plaintiff could have litigated these claims as

4

counterclaims in a declaratory judgment action previously filed by the City. Defendants also raise the defense of qualified immunity as to plaintiff's section 1983 claim against the individual defendants.[4] Plaintiff responds that his section 1983 and GTCA claims were not compulsory counterclaims because they did not exist at the time the City filed its declaratory judgment action in state court. Plaintiff further argues that defendants are not entitled to rely on a defense of qualified immunity, because the OORA constitutes clearly established law of which defendants should have been aware.

**A.**

When reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party. Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**B.**

Defendants argue that plaintiff should not be given a second opportunity to litigate claims that could have been raised during the declaratory judgment action filed by the City. They characterize Shero's claims in this case as claims that would have been compulsory counterclaims in the previous action, and which are barred by res judicata. Shero raises two arguments in response: (1) his claims were not ripe for adjudication before February 2, 2004; and (2) he did not

---

[4]   Defendants sought dismissal of plaintiff's claims under 42 U.S.C. §§ 1985 and 1986. Plaintiff filed an amended complaint and withdrew these claims. Therefore, Defendants' motion to dismiss is moot as to plaintiff's section 1985 and 1986 claims.

5

have to assert these claims because they would not have been compulsory counterclaims under Oklahoma law.

Res judicata, also known as claim preclusion, "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action." Driver Music Co., Inc.v. Commercial Union Ins. Co., 94 F.3d 1428, 1435 (10th Cir. 1996) (quoting Frandsen v. Westinghouse Corp., 46 F.3d 975, 978 (10th Cir. 1995)). This doctrine bars claims that were actually litigated or could have been litigated in the initial action. SIL-FLO, Inc., SFHC, Inc., 917 F.2d 1507, 1520 (10th Cir. 1990). Res judicata is an affirmative defense and the defendant bears the burden to prove that each of the following four elements are met: "(1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." Nwosun v. General Mill Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997). In cases such as this, where the initial action was filed in state court, the Tenth Circuit requires the district court to refer to state law to determine if the unlitigated counterclaims were compulsory or permissive. Stone v. Dept. of Aviation, 453 F.3d 1271, 1275-76 (10th Cir. 2006).[5]

---

[5] As a practical matter, Oklahoma has adopted the language of Fed. R. Civ. P. 13(a) and its courts have referred to federal law for guidance on interpreting Okla. Stat. tit. 12, § 2013(a). See Oklahoma Gas & Elec. Co. v. Dist. Ct., Fifteenth Judicial Dist., Cherokee County, 784 P.2d 61 (Okla. 1989). The Tenth Circuit has considered federal and Oklahoma law when determining whether a counterclaim is compulsory or permissive under section 2013(a). Fox v. Maulding, 112 F.3d 453, 457 (10th Cir. 1997).

Oklahoma law requires a defendant to file a counterclaim in a responsive pleading if "it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Okla. Stat. tit. 12, § 2013(a); Robinson v. Texhoma Limestone, Inc., 100 P.3d 673, 675 (Okla. 2004). Counterclaims are compulsory if they arise from the same transaction or occurrence as plaintiff's claims. Berrey v. Asarco Inc., 439 F.3d 636, 645 (10th Cir. 2006); Pipeliners Local Union No. 798 v. Ellerd, 503 F.2d 1193 (10th Cir. 1974). The Tenth Circuit looks at four factors to determine if a counterclaim is compulsory:

> (1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) res judicata would bar a subsequent suit on defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and (4) there is a logical relationship between the claim and counterclaim.

FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994). Shero argues that the dismissal of the City's claims in the declaratory judgment action prevents the Court from considering the issue of res judicata, because counterclaims can not be considered compulsory once a case is dismissed. However, plaintiff filed a responsive pleading with a counterclaim in the declaratory judgment action, not a motion to dismiss, and plaintiff's case law is inapplicable. See National Union Fire Ins. Co. of Pittsburgh, Pennslyvania v. Jett, 118 F.R.D. 336, 337 (S.D.N.Y. 1988).

The prior lawsuit in this case was a declaratory judgment action filed by the City to determine Shero's right to have a council packet before a city council meeting. Shero filed an answer and counterclaim in state court seeking declaratory relief. The City's claim was dismissed for lack of standing. However, Shero received a judgment on his counterclaim seeking a declaration that the City was required to turn over the information in a council packet upon request. Under section 2013(a), Shero was required to bring any claims he had at the time he filed his answer on

7

February 9, 2004. Metroplex Properties, LLC v. Oral Roberts University, 956 P.2d 926, 930 (Okla. Civ. App. 1998) (holding that counterclaims not filed as part of a previous declaratory judgment action were compulsory and barred by res judicata in subsequent case).

Based on the facts presented in the complaint, it is clear that Shero's section 1983 and GTCA claims could not have been filed in the previous action. Much of the factual basis for Shero's section 1983 claim arose after February 9, 2004, and would not have given rise to a compulsory counterclaim in the state court action. Shero's complaint bases both of his claims on acts that occurred after February 9, 2004, such as the time limitations at city council meetings and denials of requests for information about bids to purchase the Grove Civic Center. Although some of the acts occurred prior to February 9, 2004, such as the City's denial of Shero's request for a council packet, he successfully litigated those issues in the state court action. Therefore, Shero's section 1983 claim does not arise out of the same transaction or occurrence as the state court action. Shero's GTCA claim could not have been filed in the previous action, because he not serve the City with written notice of his GTCA claim before February 9, 2004, nor did he have a duty to do so until January 2, 2005.[6] The claim procedures under the GTCA provide that Shero could not bring a GTCA claim against the City until he filed written notice and the City had 90 days to investigate his claim. Shero's GTCA claim was not ripe and he did not need to file this claim as a compulsory counterclaim in the previous action. Defendants may seek to apply issue preclusion to narrow the issues in this case to ones that have not been previously litigated, but the Court will not apply claim preclusion as a bar to Shero's claims that arose after February 9, 2004. It is clear that these claims

---

[6] This is one year from the date Shero's request for a council packet was denied for the first time.

did not arise out of the same transaction or occurrence, and claim preclusion is not applicable to such claims.

## C.

The individual defendants -- Galletly, Parker, Buzzard, Nuckolls, Jobe, Adzigian, Rowe, and Helms -- seek dismissal on the ground that they are entitled to qualified immunity from plaintiff's claims, because there was no clearly established constitutional law that they were required to provide Shero a council packet under the First Amendment. Shero claims that defendants should have been aware their conduct violated the OORA, as well as Shero's First Amendment rights.

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigations and is an immunity from suit, not simply a defense to plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit has adopted a three part test when analyzing a qualified immunity defense: (1) the court must consider if plaintiff's allegations establish a constitutional violation; (2) if plaintiff has alleged a constitutional violation, the court must examine whether the law was clearly established at the time the alleged violation occurred; and (3) even the law was clearly established, the Court must consider any extraordinary circumstances prevented the public official from knowing his actions were unconstitutional. Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006); Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005). Law is clearly established if "a reasonable official in defendant's situation would have understood that his conduct" violated plaintiff's constitutional

rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). In Hope v. Pelzer, 536 U.S. 741 (2002), the Supreme Court changed this analysis from a "scavenger hunt for prior cases with precisely the same facts" to an inquiry into whether officials had fair notice that their conduct was unconstitutional. Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

Shero claims that defendants should have been aware that their conduct violated the OORA. Contrary to plaintiff's assertions, the OORA does not constitute clearly established law for a section 1983 claim. The plain language of section 1983 provides that the Court may not consider state law as a basis for plaintiff's claim:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Defendants' alleged violations of the OORA are irrelevant to plaintiff's section 1983 claim. Section 1983 explicitly states that it provides a remedy for violations of the United States Constitution or federal law. The Court will consider defendants' alleged violations of the OORA to the extent those actions may also infringe Shero's First Amendment rights. However, he may not rely on the OORA to form the basis for clearly established law in response to a qualified immunity defense.

Defendants' claim that they are not aware of any authority from the Tenth Circuit or the Supreme Court requiring them to turn over council packets and plaintiff's response does not cite any precedent discussing a First Amendment right to receive access to council packets. Plaintiff phrases the constitutional violation as a "overt attempt to chill Shero's participation in the political process."

Dkt. # 27, at 10. The law is clear that there is no constitutional right to access information under government control, even if the information is requested for a legitimate First Amendment purpose. Houchins v. KQED, Inc., 438 U.S. 1 (1978) "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control); Smith v. Plati, 258 F.3d 1167, 1178 (10th Cir. 2001) ("It is well-settled that there is no general First Amendment right of access to all sources of information within government control"); Capital Cities Media, Inc. v. Chester, 797 F.2d 1164 (3d Cir. 1986) (finding no First Amendment right to access documents within control of EPA). Shero has not cited federal law that would support a finding that his First Amendment rights were violated because he was denied access to information.

Shero claims that the time restriction at the March 16, 2004 city council meeting was a prior restraint on his right to free speech, and that his allegations state a violation of his clearly established First Amendment rights. Based on the allegations in the complaint, it appears the city council placed a time restriction on Shero, but not a prior restraint preventing him from addressing the city council. "The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 283 (1984). When analyzing First Amendment challenges, courts have generally treated city council meetings as a limited public forum and have upheld content-neutral speech restrictions at public meetings. Rowe v. City of Cocoa, Florida, 358 F.3d 800, 803 (11th Cir. 2004) (upholding policy preventing non-residents from addressing city council); Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (dismissing section 1983 claim challenging policy limiting speech to issues of public concern); Carlow v. Mruk, 425 F. Supp. 2d 225, 243-44 (D.R.I. 2006) (non-resident

11

firefighters could be prohibited from speaking at annual district meeting).  The Tenth Circuit does not apply strict scrutiny when reviewing regulations of speech in a limited public forum,[7] but a city council meeting may also qualify as a designated public forum for a limited purpose under Tenth Circuit precedent.  In a designated forum for a limited public purpose, restrictions on speech must generally be content neutral, and time, place, and manner restrictions must be reasonable.  Summum, 130 F.3d at 914.

Shero's complaint states that he attempted to address the city council on March 16, 2004, but the city council limited his time to speak.  He claims that time restrictions had never been used at council meetings before, and he infers that the restriction was designed specifically to limit his speech.  However, the complaint clearly states that no other speakers were present at the meeting. The Court does not find that the city council imposed a content based restriction on Shero's speech at city council meetings.  Even if the Court assumes the restriction was content-based, public bodies may limit speech at open meetings to prevent speakers from creating an undue disruption or discussing irrelevant issues.  See Rowe, 358 F.3d at 803 (city may limit speech at public meetings to maintain order and prevent repetitious questions); White, 900 F.2d at 1425 (permitting city council to restrict unduly repetitious or irrelevant speech); Gault v. City of Battle Creek, 73 F. Supp.

---

[7]  Tenth Circuit precedent on the distinction between a limited public forum and a designated public forum for a limited purpose is unclear.  A limited public forum is treated as a type of nonpublic forum, while speech regulations in a designated public forum for a limited purpose are subject to strict scrutiny review.  Summum v. Callaghan, 130 F.3d 906, 914-17 (10th Cir. 1997).  However, other courts have not made this distinction and use the term "limited public forum" to describe a forum opened for speech by a governmental entity.  See White v. City of Norwalk, 900 F.2d 1421, 1425-26 (9th Cir. 1990); Jocham v. Tusola County, 239 F. Supp. 2d 714, 727 (E.D. Mich. 2003). For purposes of defendants' motion to dismiss, the Court will treat a city council meeting as a designated public forum for a limited purpose.

2d 811, 814 (W.D. Mich. 1999) (restrictions on speech at public meetings constitutional unless policy constitutes a content or viewpoint based restriction). Absent a content-based restriction, the City has not violated any clearly established law by placing a time restriction on Shero's speech at city council meetings.[8]

The Court finds that Shero's complaint does not contain allegations that create any likelihood that city officials will be found in violation of clearly established constitutional law. Therefore, Shero's section 1983 claim against the individual defendants -- Galletly, Parker, Buzzard, Nuckolls, Jobe, Adzigian, Rowe, and Helms -- is dismissed.

**IV.**

Defendants, with the exception of defendants Nold and Parker, request leave of court to amend their answer to include an affirmative defense of absolute immunity to plaintiffs section 1983 claim. Plaintiff opposes defendants' motion on the basis that defendants have waived this defense by failing to plead it in a timely manner, and that it would futile to allow defendants to include a defense for absolute immunity. A defendant may seek leave to amend an answer to include an unintentionally omitted affirmative defense and such leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a); Kontrick v. Ryan, 540 U.S. 443, 445 (2004); Foman v. Davis, 371 U.S. 178, 182 (1062); Bradley v. Val-Mejias, 379 F.3d 892, 900-01 (10th Cir. 2004). However, the court has the discretion to deny a motion to amend if it is untimely or the proposed amendment would be futile. Bauchman for Bauchman v. West High School, 132 F.3d 542, 560 (10th Cir. 1997).

---

[8] Shero's complaint alleges that the City's declaratory judgment action was an abuse of process that was intended to discourage Shero from exercising his First Amendment rights. However, he cites no case law in support of this proposition and the Court can not find any precedent that would support a finding that clearly established law prevents a public body from seeking a declaratory judgment to establish its rights.

"In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" Hom v. Squire, 81 F.3d 969, 972 (10th Cir. 1996).

The Court finds that defendants' motion to amend is moot, because they have raised the defense of absolute immunity in their motion for summary judgment (Dkt. # 101). The Tenth Circuit allows a defendant to raise qualified or absolute immunity in an answer, motion to dismiss, or motion for summary judgment. Quezada v. County of Bernalillo, 944 F.2d 710, 718 (10th Cir. 1991); Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 644-45 (10th Cir. 1988). Defendants have asserted an absolute immunity defense in their motion for summary judgment, and the Court can consider this defense without requiring defendants to amend their answer. Plaintiffs cite two cases for the proposition that a defense of absolute immunity is waived if it was not pled in defendants' answer. See Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273 (5th Cir. 2002); Bentley v. Cleveland County Board of County Comm'r, 41 F.3d 600 (10th Cir. 1994). However, these cases do not support plaintiff's position. In Cozzo, the Fifth Circuit held that it could not rule on defendant's absolute immunity defense when it was raised for the first time on appeal, but it has no application to this Court's consideration of a motion to amend pleadings. 279 F.3d at 283. Likewise, the Tenth Circuit refused to consider qualified or absolute immunity defenses on appeal when they had not been pled. Bentley, 41 F.3d at 604.

The Court will consider defendants' absolute immunity defense as part of defendants' motion for summary judgment, and there is no need for defendants to file an amended answer. Therefore, defendants' motion to amend (Dkt. # 75) is moot.

**IT IS THEREFORE ORDERED** that Robert Nold's Special Appearance, Motion to Dismiss and Brief in Support (Dkt. # 22) is **granted**. Defendant's Motion to Dismiss and Brief in Support (Dkt. # 23) is **denied in part, granted in part, and moot in part**: it is **denied** as to defendants' motion to dismiss the complaint based on res judicata; it is **granted** as to defendants Galletly, Parker, Buzzard, Nuckolls, Jobe, Adzigian, Rowe, and Helms' defense of qualified immunity from plaintiff's section 1983 claim and it is **moot** as to plaintiff's section 1985 and 1986 claims. Defendant's Opposed Motion to Amend Affirmative Defenses (Dkt. # 75) is **deemed moot**.

**IT IS FURTHER ORDERED** that Robert Nold is **terminated** as a party defendant.

**DATED** this 20th day of September, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT