## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID EARL SHERO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 05-CV-0137-CVE-PJC** |
| | ) | |
| **CITY OF GROVE, OKLAHOMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions : Motion for Summary Judgment and Brief in Support on Behalf of Defendants City of Grove/Grove City Council, William Galletly, Dorothy Parker, Ivonne Buzzard, Carolyn Nuckolls, Randy Jobe, David Adzigian, and David Helms (Dkt. # 101); Plaintiff's Motion for Summary Judgment against the City of Grove and Grove City Council with Brief in Support (Dkt. # 102); and Defendants' Motion in Limine (Dkt. # 111).

## I.

David Shero is a resident of the City of Grove, Oklahoma ("the City") and regularly attends Grove City Council ("City Council") meetings. Before City Council meetings, each council member receives an informational packet that Shero refers to as a "council packet." The council packet contains information related to the meeting agenda and personal notes unique to each city council member. On November 17, 2003, Shero requested and was provided a council packet before the City Council meeting. He subsequently obtained council packets before the December 1 and December 15, 2003 City Council meetings. The City Council did not create a generic council packet before each meeting, even though many of the documents in the council packet was a matter of public record. Each time Shero requested a council packet, he was given the City Clerk, Ivonne

Buzzard's, personal packet.  Following Shero's request for a council packet on December 15, 2003,

Buzzard contacted the City attorney, Dorothy Parker, who advised Buzzard to refuse any future

requests by Shero for a council packet.[1]  Shero asked for a council packet on January 2, 2004, but

his request was denied.  He addressed the City Council on January 6, 2004, and stated his belief that

the City's denial of his request for a council packet was in violation of the Oklahoma Open Records

Act, Okla. Stat. tit. 51, § 24A.1 et seq. ("OORA").  He also alleged violations of the Oklahoma Open

Meetings Act, Okla. Stat. tit. 25, § 301 ("OOMA"),  related to the City's negotiations concerning

the sale of the Grove Civic Center. Shero believes that his comments angered members of the City

Council and he claims he was verbally attacked by Parker.  Shero's subsequent requests for a council

packet on January 16 and January 30, 2004 were denied.  On January 30, 2004, while Shero was

waiting for a response to his request for a council packet, he noticed that another person was

provided with a council packet and the person was not a member of the City Council.  However,

council member David Helms sent his wife to pick up his council packet before the meeting.

On February 2, 2004, the City filed a declaratory judgment action in state court against

Shero.[2]  The City alleged that Shero had no right to a council packet under the OORA, and sought

a protective order from any future requests for council packets.   Shero answered and filed a

---

[1]     Parker determined that the council packets contained privileged information that did not have to be made available to the public.  She based her decision primarily on the fact that each person's packet was different, and was designed to assist each city officer in performing his or her job.  Parker noted that Shero could have requested specific public records and they would have been provided.  However, she did not feel that he was entitled to a council packet.

[2]     Shero claims the City was prompted to pursue legal action by Shero's threat on January 30, 2004, to file a claim against the City under the OORA. The City denies this allegation and claims it merely sought to clarify Shero's right to obtain a council packet.

2

counterclaim on February 9, 2004.  On February 13, 2004, the City's claim was dismissed for lack

of subject matter jurisdiction, but Shero's counterclaim was allowed to proceed.[3]  On February 17,

2004, Shero attended the City Council meeting and addressed the council, but he was informed that

he could speak for only three minutes.  Shero claims that the City Council did not previously have

any policy on the length of time a person was allowed to speak.  Shero subsequently attempted to

obtain copies of any unsolicited offers to purchase the Grove Civic Center, but city manager William

Galletly denied Shero's request on March 2, 2004.  Following this denial, Shero amended his

counterclaim to include the City's denial of his request for information about the Grove Civic

Center.[4]  On April 8, 2004, the state court ruled that the council packets and the resume of the city

attorney must be disclosed under the OORA, but that the City could redact confidential portions of

any document.  The court entered judgment in favor of Shero and awarded him attorney fees.

Shero filed this lawsuit against the City and individual defendants for violations of the

Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 et seq. ("GTCA") and 42 U.S.C. § 1983.

In a previous Opinion and Order (Dkt. # 130), the Court dismissed the section 1983 claim against

individually named city officials based on qualified immunity, but this claim is still pending against

the City and City Council.  The Court also dismissed defendant Robert Nold, because plaintiff failed

to properly serve him.

---

[3]     The City filed the lawsuit without receiving authorization from the City Council at an open
meeting, and the state court found that the City lacked standing to pursue its claim.

[4]     Shero claims that his employer, Grand Federal Savings Bank, told him to dismiss his lawsuit
against the City or he would be fired.  The summary judgment record shows that this was
a personal decision by the bank president and was not the result of any governmental action.
Dkt. # 102, Ex. L, Affidavit of Anne Manicom.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment.

Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Defendants raise many of the same arguments the Court considered when ruling on

defendants' motion to dismiss (Dkt. # 23), and much of their motion for summary judgment is

moot.[5]  Defendants argue that plaintiff is not entitled to relief for any of his alleged constitutional

violations.  The municipal defendants, the City and City Council, assert that they can not be held

liable under section 1983, because they did not enact an official policy that deprived plaintiff of a

constitutional right.  Defendants also claim that Shero may not rely on the OORA or OOMA to

prove a violation of the GTCA or section 1983.

**A.**

The municipal defendants, the City and City Council, assert that they did not enact a policy

that caused a violation of plaintiff's constitutional rights and, therefore, they can not be held liable

under section 1983.  Plaintiff claims that defendants violated the First Amendment by refusing to

provide him a council packet before meetings, which prevented him from accessing information he

desired in order to petition the government as an informed citizen.  He argues that violations of the

OORA should also be treated as a violation of the First Amendment, because the policy goals of the

OORA coincide with the right to petition the government under the First Amendment.  Under

---

[5]     The Court has previously held that the individual defendants, Galletly, Parker, Buzzard, Carolyn Nuckolls, Randy Jobe, David Adzigian, Charles Rowe, and Helms, have qualified immunity from plaintiff's section 1983 claim.  Defendants' argument that plaintiff should have raised his claims as compulsory counterclaims in the state court declaratory judgment action has been rejected.

section 1983, a municipality may be held liable only for constitutional violations resulting from

official policies and customs.  Monell v. Dept. of Social Servs., 436 U.S. 658, 690-91 (1978).  A city

or county government can not be liable based on respondeat superior merely for employing a

tortfeasor.  Starrett v. Wadley, 876 F.2d 808, 818 (10th Cir. 1989).  To impose municipal liability,

the plaintiff must generally show that a pattern of unconstitutional behavior occurred over a period

of time to refute the inference that any deprivation of constitutional rights was an isolated incident.

Brown v. Reardon, 770 F.2d 896, 902 (10th Cir. 1985).

Shero claims that his requests for council packets were in furtherance of his right to petition

the government, because the information in the council packets was necessary for him to present

informed arguments to the City Council.[6]  However, it is "well-settled that there is no general First

Amendment right of access to all sources of information within governmental control."  Smith v.

Plati, 258 F.3d 1167, 1178 (10th Cir. 2001).  Under the First Amendment, plaintiff has the right of

free speech and a right to petition the government, but that does not mean that he has an unrestrained

right to gather information from the government to exercise these rights.  Houchins v. KQED, Inc.,

438 U.S. 1, 12 (1978).  Oklahoma law, specifically the OORA, allows plaintiff to request

---

[6]     Even though the First Amendment's guarantees of free speech and the right to petition are
        separate rights, the Supreme Court has stated that these rights are "essentially the same" and
        are subject to the same constitutional analysis.  Wayte v. United States, 470 U.S. 598, 610
        n.11 (1985).

information from municipal government, but plaintiff cites no case law suggesting he has a First Amendment right to obtain information maintained by a governmental body.[7]

In a similar case, a federal district court granted qualified immunity to members of a local zoning board, because they reasonably believed that a violation of the Vermont Open Meeting Act was not equivalent to a First Amendment violation. Berlickij v. Town of Casteleton, 248 F. Supp. 2d 335 (D. Vt. 2003). In Berlickij, the plaintiff served as the zoning administrator and town assessor for Castleton, Vermont, but the city council voted to remove plaintiff from both positions. The plaintiff, Patricia Berlickij, sued the town of Castleton and individual members of the city council under section 1983 for violating her First Amendment rights and the Vermont Constitution. Her First Amendment claims incorporated alleged violations of the state's Open Meeting Act. While recognizing a right to petition the government and attend city council meetings, plaintiff's alleged violations of a state open meeting law did not clearly implicate First Amendment concerns, and the court did not find a clearly established federal constitutional remedy for plaintiff's claims. That court found that City Council members reasonably believed that state law furnished plaintiff's sole source of redress, and section 1983 relief was not available.

Shero has not shown the necessary connection between his right to petition the government and his alleged First Amendment right to obtain information to promote that purpose. The Free Speech Clause "bars government interference with the flow of information through the closure of

---

[7]     The OORA specifically states that Oklahoma citizens have a right under the Oklahoma Constitution to obtain information from state and local governments. See Okla. Stat. tit. 51, § 24A.2 ("As the Oklahoma Constitution recognizes and guarantees, all political power is inherent in the people. Thus, it is the public policy of the State of Oklahoma that the people are vested with the inherent right to know and be fully informed about their government.). However, the OORA does not reference a First Amendment right to gather information from state governments.

governmental proceedings that historically have been open to the public." Capital Cities Media, Inc.

v. Chester, 797 F.2d 1164, 1168 (3d Cir. 1986).  The parties do not dispute that Shero has a right to

attend City Council meetings.  However, even if plaintiff has a First Amendment right to attend

public meetings of the city council, he is not expressly guaranteed a right to speak at a meeting of

any public body.  Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 283-84

(1984) ("Policy making organs in our system of government have never operated under a

constitutional constraint requiring them to afford every interested member of the public an

opportunity to present testimony before a policy is adopted.).  However, if the City Council opened

meetings for public discussion, Shero could not be prevented from speaking based on the content

of his speech.  City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations

Commission, 429 U.S. 167, 174 (1976).

Shero must show that the City interfered with his right to speak at a public meeting by

denying his request for a council packet.  The City Council did not prohibit Shero from raising his

concerns at public meetings and, even if Shero did not have access to all of the information he

requested, the City Council's denial of his request for a council packet did not prevent the free

exchange of speech and ideas at council meeting.  The First Amendment "was fashioned to assure

unfettered interchange of ideas for the bringing about of political and social changes desired by the

people."  Meyer v. Grant, 486 U.S. 414, 421 (1988) (quoting Roth v. United States, 354 U.S. 476,

484 (1957)).  Even if the City Council disagreed with Shero's ideas or believed it had a right to deny

his request for a council packet, Shero had a right to petition the council.  City of Cuyahoga Falls,

Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188 196 (2003) ("our well established

First Amendment admonition that 'government may not prohibit the expression of an idea simply

because society finds the idea itself offensive or disagreeable,'. . . dovetails with the notion that all citizens, regardless of the content of their ideas, have the right to petition their government"). The undisputed facts show that Shero was allowed to address the City Council on January 6, 2004, where he complained that his request for a council packet had been denied and alleged that the City Council violated the OOMA by holding closed negotiations for the sale of the Grove Civic Center. Shero states council members were angry about his statements and he was questioned about his allegations. Shero also addressed the City Council about these same matter on February 17, 2004. Shero was allowed to speak at City Council meetings, even when council members disagreed with his ideas, and this is all that the First Amendment requires.

Plaintiff has already received a remedy under state law for the City Council's improper denials of his request for information, and he has not shown that First Amendment guarantees him the right to acquire a council packet before City Council meetings. The City Council allowed Shero to speak even if his ideas were unpopular and, therefore, Shero has not been denied his right to petition the government under the First Amendment. Neither the City nor the City Council may be held liable under section 1983 for denying Shero a council packet before meetings.

**B.**

Shero claims that the City's declaratory judgment action to determine his right to a council packet under the OORA was retaliatory and chilled the exercise of his right to free speech. Defendants characterize the declaratory judgment proceedings as non-threatening method of resolving the parties's dispute, and claim that Shero has no evidence that it was filed in retaliation against Shero for engaging in constitutionally protected activity. The Court has already found that Shero did not have a First Amendment right to receive a council packet, and Shero's request for a

council packet does not constitute protected First Amendment activity.  Therefore, he must identify

another basis to show that defendant's infringed on his right to free speech.

Governmental bodies may not retaliate against a citizen for the lawful exercise of his First

Amendment rights, because it tends to chill the exercise of a person's rights to free speech and

association.  Robbins v. Wilkie, 433 F.3d 755, 765 (10th Cir. 2006); Perez v. Ellington, 421 F.3d

1128, 1132 (10th Cir. 2005).  To prove a claim for retaliation, the plaintiff must prove three

elements:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the
> defendant's actions caused the plaintiff "to suffer an injury that would chill a person
> of ordinary firmness from continuing to engage in that activity"; and (3) that the
> "defendant's adverse action was substantially motivated as a response to the
> plaintiff's exercise of constitutionally protected conduct."

Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).  Official action does not impermissibly

suppress a citizen's right to free speech unless the governmental action "punish[es], or threaten[s]

to punish, protected speech."  Axson-Flynn v. Johnson, 356 F.3d 1277, 1290 (10th Cir. 2004);

Phelan v. Laramie County Community College Bd. of Trustees, 235 F.3d 1243 (10th Cir. 2000).

A lawsuit may constitute a punishment if the government filed the suit with a desire to retaliate

against a citizen for exercising their First Amendment rights.  Beedle v. Wilson, 422 F.3d 1059,

1066 (10th Cir. 2005) (denying motion to dismiss section 1983 claim when plaintiff pled that

hospital filed a libel lawsuit with the intention of chilling his First Amendment rights); Wolford v.

Lasater, 78 F.3d 484, 488 (10th Cir. 1996) ("a decision to prosecute which is motivated by a desire

to discourage protected speech or expression violates the First Amendment and is actionable under

§ 1983").

Plaintiff can not satisfy the first prong of Worrell, because he can not show that he was engaging in constitutionally protected activity.  As discussed above, the City Council's decision to deny Shero a council packet did not interfere with his right to petition the government, nor did it violate his right to free speech.  Shero claims that the City's decision to file a declaratory judgment action against him was a violation of his constitutional rights, because the action was filed with the intention of chilling his criticism of the City Council.  Under Oklahoma law, courts can "determine certain rights and relationships 'in cases of actual controversy.'" Ferguson Pontiac-GMC, Inc. v. Henson, 892 P.2d 657, 659 (Okla. Civ. App. 1994).  Declaratory judgment suits take on the nature of the controversy at issue, but do not create any additional remedies beyond those created by substantive law.  Macy v. Oklahoma City Sch. Dist. No. 89, 961 P.2d 804, 807 (Okla. 1998).  Contrary to plaintiff's assertions, a declaratory judgment action is a non-threatening method of resolving First Amendment disputes, and courts often grant pre-enforcement review of statutes to avoid burdens on free speech rights.  Pittman v. Cole, 267 F.3d 1269, 1285 (11th Cir. 2001); Nat'l Rifle Ass'n of America v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997). The City filed a claim seeking declaratory and injunctive relief under the OORA, but Shero could not have been subjected to money damages.  The declaratory judgment action simply provided a forum to determine the rights of both parties to the information contained in council packets.  The state court determined that Shero had a right to the documents and ordered the City to pay his attorney's fees.  The declaratory judgment process would not chill a person of ordinary firmness from continuing to request a council packet or appear at City Council meetings.  Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004).  Therefore, Shero has not proven that the City violated his constitutional rights by filing a declaratory judgment action pursuant to the OORA.

Because the Court has not found that Shero was engaged in any constitutionally protected activity under the First Amendment, he can not prove a <u>prima</u> <u>facie</u> case for retaliation under <u>Worrell</u>. The fact that the City improperly filed the lawsuit without authorization from the City Council does not show that action was frivolous on its merits, or that the City intended to chill his criticism of the City Council by filing a retaliatory lawsuit.[8] Defendants are entitled to summary judgment on plaintiff's section 1983 claim for retaliation, as the declaratory judgment action was not an official policy that violated Shero's constitutional rights.

## C.

Shero's last argument that the City violated his constitutional rights is that the time limitation on his speech at City Council meetings was a prior restraint in violation of the First Amendment. He also claims that the City Council's selective enforcement of the time limitation violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Defendants respond that the time limitation is not a prior restraint, nor was it applied in an unconstitutional manner.

The Supreme Court has emphasized that "prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights." <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 559 (1976). However, Shero has not shown that a three-minute time limitation on his speech at city council meetings is a prior restraint. City council meetings are not

---

[8]     Shero argues he was entitled to immunity from punishment when petitioning the government under the <u>Noerr-Pennington</u> doctrine. <u>See</u> <u>United Mine Workers v. Pennington</u>, 381 U.S. 657 (1965); <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961). The <u>Noerr-Pennington</u> doctrine provides immunity from antitrust liability, specifically for organizations that use market power to persuade the government to act in a particular way. <u>FTC v. Ticor Title Ins. Co.</u>, 504 U.S. 621, 627 (1992). The City filed a lawsuit under the OORA, not the Sherman Act, and plaintiff was not subject to antitrust liability for his petitioning activities. The <u>Noerr-Pennington</u> doctrine is clearly inapplicable in this case.

open forums for unlimited public speech, and there is a "significant governmental interest in conducting orderly, efficient meetings of public bodies. Rowe v. City of Cocoa, Florida, 358 F.3d 800, 803 (11th Cir. 2004). Assuming that Shero was engaging in protected speech, the City Council could still impose reasonable, content-neutral restrictions on speech at City Council meetings. Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266, 271 (9th Cir. 1995) ("The fact remains that limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be"); White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990) (While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing . . . it may certainly stop him if his speech becomes irrelevant or repetitious."). Shero does not have a First Amendment right to speak for an unlimited period of time, and he has not shown that a time limitation constitutes a prior restraint.

Defendants argue that the time limitation does not violate plaintiff's rights, because it is a reasonable time, place and manner restriction in the context of a city council meeting. Case law suggests that courts have treated city council meetings as different types of fora. See Rowe, 358 F.3d at 803 (limited public forum); Degrassi v. City of Glendora, 207 F.3d 636, 646 (9th Cir. 2000) (nonpublic forum); Wright v. Anthony, 733 F.3d 575, 577 (8th Cir. 1984) (limited public forum); Gault v. City of Battle Creek, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (limited public forum). It is not clear whether the Tenth Circuit would treat a city council meeting as a limited public forum or designated public forum. Summum v. Callaghan, 130 F.3d 906, 914-17 (10th Cir. 1997) (holding that speech in a designated public forum should be reviewed under strict scrutiny, while limited public forum speech subject to reasonableness standard only). For the purpose of ruling on defendants' motion for summary judgment, the Court will accept plaintiff's assertion that city

council meetings are a designated public forum. See First Unitarian Church of Salt Lake City v. Salt Lake City Corp., 308 F.3d 1114, 1124 (10th Cir. 2002) ("Designated public fora are created by 'purposeful government action . . . by intentionally opening a nontraditional public forum for public discourse'"). In a designated public forum, "the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." People for the Ethical Treatment of Animals v. Rasmussen, 298 F.3d 1198, 1204 (10th Cir. 2002).

The City Council's policy was a reasonable time, place, and manner restriction that served a significant governmental interest. The time limit was content-neutral and applied to all speakers. Shero was allowed to speak, regardless of the content of his speech, and he has not introduced any evidence showing that the time limitation was selectively applied.[9] The City Council has a strong interest in maintaining orderly meetings and limiting speech to relevant issues. Rowe, 358 F.3d at 803. Although Shero may have wanted to discuss the City's declaratory judgment action against him or unsolicited bids for the sale of the Grove Civic Center, it is not clear that those items were actually on the meeting agenda. White, 900 F.2d at 1425 (restrictions on irrelevant speech at city council meeting do not violate First Amendment). Shero claims that City Councils members were visibly angry at him after he spoke at meetings, but he was still allowed to speak as long as his speech was relevant. A time limitation insures the orderly flow of public meetings, but still leaves open other channels of communication. For example, Shero circulated flyers to the general public

---

[9]     Even though Shero believes the City Council specifically intended to limit his speech at meeting, he has not shown that other citizens were allowed to speak for an indefinite duration. In fact, his amended complaint states that Shero's time to speak was limited on March 16, 2004, but "no other speakers were present."

14

criticizing the City Council, published information on the Internet, and was interviewed for an article

in the Tulsa World regarding his OORA requests.  Defendants may not have been pleased with

Shero's political activities, but they did not interfere with his right to free speech outside of City

Council meetings.  The Court finds that the time limitation advanced a significant governmental

interest in conducting efficient public meetings, and it is a content-neutral time, place and manner

restriction.

Shero has not cited any case law showing that he had a right to speak indefinitely at public

meetings, or that the policy was selectively applied.  Therefore, the time limitation does not infringe

Shero's right to free speech or equal protection rights.  Plaintiff has not shown that the municipal

defendants enacted an unconstitutional policy, and summary judgment is granted to defendants on

his section 1983 claim.

**IV.**

Defendants seek summary judgment on plaintiff's GTCA claim.  They argue that plaintiff

may not rely on the OORA or OOMA as a basis for this claim.  Plaintiff responds that he can

incorporate the OORA and OOMA into a claim for negligence using a theory of negligence per se,

and that both statutes imply a private right of action for monetary damages.[10]

Plaintiff claims that he can pursue violations of the OORA and OOMA though the GTCA.

Section 153 of the GTCA provides:

> The state or a political subdivision shall be liable for loss resulting from its torts or
> the torts of its employees acting within the scope of their employment subject to the
> limitations and exceptions specified in this act and only where the state or political

---

[10]     Plaintiff asserts the same constitutional claims under the GTCA that were discussed by the
Court above.  The Court has already determined that plaintiff has not proven a constitutional
violation and will not revisit those issues under the GTCA.

subdivision, if a private person or entity, would be liable for money damages under the laws of this state.

Money damages are not available against a governmental body under either the OOMA or OORA. See Okla. Stat. tit. 25, §§ 313, 314 (creating criminal penalties for willful violations of the OOMA, but not expressly creating a private right of action); Okla. Stat. tit. 51, § 24A.17 (creating right to bring a civil suit for declaratory or injunctive relief, but specifically excluding money damages). Since no private citizen could bring a claim for damages under the OORA or OOMA, plaintiff may not use the GTCA to avoid the exemptions from monetary liability created by those acts. Kluver v. City of Hinton, 924 P.2d 306, 307 (Okla. Civ. App. 1996) (explaining that section 153 does not waive immunity from tort liability provided by any other statute).  This statute prevents plaintiff from using the OORA or the OOMA as a basis for liability, even under a negligence per se theory, because a private person would not be liable for money damages for a violation of either statute.

Plaintiff claims that both the OORA and OOMA create an implied private right of action and he is authorized to receive money damages for violations of both statutes.  The Oklahoma Supreme Court has recognized that a statute may create a private right of action under some circumstances. In order to imply a private right of action, the Court must find that three-factors are present:

> (1) the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) some indication of legislative intent, explicit or implicit, suggests that [the legislature] wanted to create a private remedy and not to deny one; [and] (3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme.

Holbert v. Echeverria, 744 P.2d 960, 963 (Okla. 1987).  If a statute benefits the general public as a whole, no special class is created and courts may not imply a private right of action. Walker v. Chouteau Lime Co., Inc., 849 P.2d 1085 (Okla. 1993); Nichols Hills Physical Therapy v. Guthrie, 900 P.2d 1024, 1026 (Okla. Civ. App. 1995).  The central inquiry when determining if a statute

implies a private right of action is legislative intent.[11]  Holbert, 744 P.2d at 964.  The three-part test

laid out in Holbert is not applicable if the legislature explicitly created a private right of action.

Ohio Casualty Ins. Co. v. Todd, 813 P.2d 508, 520 (Okla. 1991).

The OORA expressly creates a private right of action for declaratory and injunctive relief,

so it is unclear why plaintiff believes the Court should imply a right of action for money damages.

See Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003) (when

legislation expressly provides a remedy, courts should be hesitant to imply additional remedies not

expressly provided by statutory scheme).  The Oklahoma legislature created a limited private right

of action, but specifically excluded money damages as an element of relief.  See Okla. Stat. tit. 51,

§ 24A.17.  Holbert is not applicable, because the legislature has created a statutory right of action

under the OORA.  The Court will not imply a right of action including money damages when it

would be inconsistent with the express language of the statute.  Plaintiff may not rely on the OORA

as a basis for his GTCA claim.

Plaintiff is not entitled to pursue a private right of action under the OOMA.  The Court is

reluctant to create a private right of action for members of the general public when such a right is

not clearly implied by the OOMA.  Cannon v. University of Chicago, 441 U.S. 677, 693 n.13 (1979)

(noting general rule that courts have been reluctant to imply a right of action when statute benefits

---

[11]     Recent precedent of the United States Supreme Court unequivocally states that the key
         inquiry when determining whether a federal statute implies a private right of action is
         legislative intent.  See Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("The judicial
         task is to interpret the statute Congress has passed to determine whether it displays an intent
         to create not just a private right but also a private remedy.");  Touche Ross & Co. v.
         Redington, 442 U.S. 560, 575 (1979) ("The central inquiry remains whether Congress
         intended to create, either expressly or by implication, a private cause of action.").  In
         Holbert, the Oklahoma Supreme Court cited this reasoning as persuasive when considering
         whether a state statute contains an implied private right of action.

public at large); <u>Chemical Weapons Working Group, Inc. v. United States Dep't of the Army</u>, 111 F.3d 1485, 1494 (10th Cir. 1997) (refusing to imply right of action under 1986 Defense Authorization Act because creating a right of action for the general public would interfere with administrative enforcement); <u>Holbert</u>, 744 P.2d at 963 ("The mere state of being 'especially harmed' as the result of an act's violation does not make one a member of a special class the act might seek to protect.").  The OOMA protects the right of the general public to attend governmental meetings, but there is no express indication that the legislature intended to create a right for a specific class of citizens. Shero claims that "the class of persons to be protected are the average everyday citizens who seek to exercise their constitutional right to participate in the political process."  Dkt. # 109, at 18.  This merely describes the general public's interest in attending governmental meetings, and there are other causes of action to address alleged violations of constitutional rights.  The Court finds that the OOMA does not benefit a specific class of people, and there is no basis to imply a private right of action under the OOMA.

Outside of the constitutional claims previously discussed, plaintiff has no other legal basis for his claims under the GTCA.  Since plaintiff may not rely on the OOMA or OORA to support his GTCA claim, summary judgment is appropriate in favor of defendants on this claim.

**V.**

The Court has considered the arguments contained in plaintiff's motion for summary judgment (Dkt. # 102), and finds that plaintiff has not presented any basis for relief under the GTCA or section 1983.  These arguments duplicate those offered in response to defendants' motion for

summary judgment or have already been ruled on in the context of defendants' motion.[12] Therefore, plaintiff's motion for summary judgment should be denied.

      **IT IS THEREFORE ORDERED** that Motion for Summary Judgment and Brief in Support on Behalf of Defendants City of Grove/Grove City Council, William Galletly, Dorothy Parker, Ivonne Buzzard, Carolyn Nuckolls, Randy Jobe, David Adzigian, and David Helms (Dkt. # 101) is **granted**; Plaintiff's Motion  for Summary Judgment against the City of Grove and Grove City Council with Brief in Support (Dkt. # 102) is **denied**; and Defendants' Motion in Limine (Dkt. 111) is **moot**.

      **DATED** this 2nd day of November, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[12]     The Court incorporated any additional arguments not raised in plaintiff's response when ruling on defendants' motion for summary judgment, including plaintiff's arguments concerning the right to petition, the Noerr-Pennington doctrine, and the three minute time limitation on speech at City Council meetings.