**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DAVID EARL SHERO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CV-137-CVE-PJC |
| ) | |
| **CITY OF GROVE, OKLAHOMA.** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Referred to the undersigned for Report and Recommendation are the *Defendants' Motion for Attorney Fees* [Dkt. # 140] and the *Motion of Defendant Dorothy Parker for Attorney Fees* [Dkt. # 144].[1]

***Background***

In March 2005 Plaintiff David Earl Shero ("Shero") sued the City of Grove, the Grove City Council and various individual City officials[2] alleging violation of his rights under the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. §1983, 1985 and 1986, and violation of the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 *et seq.* [Dkt. # 2]. Plaintiff's First Amended Complaint

---

[1]   Defendant Dorothy Parker has adopted the legal arguments of the other Defendants as to entitlement to an award of fees. *See* Dkt. ## 144 & 158. Thus, Defendants' motions are addressed together.

[2]   The individual Defendants are City Manager William "Bill" Galletly ("Galletly"); City Attorney Dorothy Parker ("Parker"); City Clerk Ivonne "Bonnie" Buzzard ("Buzzard"); Mayor Carolyn Nuckolls ("Nuckolls"); Former Mayor Robert Nold ("Nold"); and City Councillors Randy Jobe ("Jobe"), David Adzigian ("Adzigian"); Charles Rowe ("Rowe"); and David Helms ("Helms").  Nold was dismissed pursuant to Order of the Court on September 20, 2006 [Dkt. # 130].  Plaintiff voluntarily dismissed Rowe on February 9, 2006 [Dkt. ## 76 & 77].  The remaining individual defendants are collectively referred to herein as the "Individual Defendants").

1

dropped the claims under §§ 1985 & 1986 [Dkt. # 28]; the case then proceeded on the §1983 and GTCA claims only.

The dispute between Shero and the City of Grove features roots that run deep and emotions that run high.  Problems giving rise to this lawsuit began early in 2003.[3] Initially, Shero questioned the City's decision to terminate a city employee; however, his criticism of City government soon expanded to include:

- The City Council's handling of a dispute with the local airport board;
- Alleged violations of the Oklahoma Open Meetings Act, 25 O.S. § 301 *et seq.*, ("OOMA") and Open Records Act, 51 O.S. § 24A.1 *et seq.,* ("OORA");
- The City's refusal to provide Shero with certain records he requested, specifically, City Councilor pre-meeting information packets and a copy of the City Attorney's resume;
- Questions concerning City dealings involving the Grove Civic Center.

In addition to these criticisms, Shero accused several City officials of criminal misconduct including misappropriation of city funds, violation of the OOMA, and violation of the OORA.[4]

Against this factual backdrop, arose the issues at the heart of this lawsuit.  By the fall of 2003, Shero was regularly attending Grove City Council meetings and frequently addressed the Council about his various concerns and criticisms.  In November and December 2003, Shero requested and received a copy of the pre-meeting "Council

---

[3] This summary of events is based on the statements of uncontested facts and supporting documents submitted by the parties in support of their Motions for Summary Judgment, Responses and Replies.  (Dkt. ## 101, 102, 108, 109, 113 & 114).

[4] In July 2004 Galletly and Buzzard entered into deferred prosecution agreements with the Delaware County District Attorney concerning misdemeanor violations of the OORA.  Similar charges against Parker were dismissed without prejudice in September 2004.  In May 2006 a Delaware County Grand Jury was asked to examine similar allegations.

packet" that councilors received prior to their meetings. The packets generally contained documents and information for use at the Council meeting, and often included notes or comments unique to a particular councilor. In January 2004, Shero requested a pre-meeting Council packet; however, this time the City Clerk denied his request.[5] On January 6, 2004, Shero addressed the City councilors and told them he believed the denial of his request for a Council packet was a violation of the OORA. Shero also asserted that the City may have violated the OOMA in conducting business related to the Grove Civic Center. On January 16, 2004, Shero again requested a Council packet and was again denied.

Shero's lawsuit alleged that certain Individual Defendants sought to retaliate against him for his remarks at the January 6, 2004, Council meeting. He contended that his continued requests for various public records and information were repeatedly denied. Shero contended that the denial of this information violated his First Amendment rights by denying him access to information necessary to exercise his right to petition the government. Nevertheless, Shero continued to voice his complaints at the City Council meetings.[6]

In February 2004, the City filed a declaratory judgment action against Shero in Delaware County District Court seeking a determination that Shero was not entitled to the Council packets under the OORA and further requesting a protective order. Shero answered and filed a counterclaim in which he alleged that the City had violated the

---

[5] Earlier, Shero had requested and been denied a copy of City Attorney Parker's resume.

[6] In March 2004, the Mayor placed a three-minute time limit on Shero's remarks at Council meetings. Shero also cites this time limit as a violation of his constitutional rights under the First and Fourteenth Amendments.

3

OORA by denying his requests for information.  On February 13, 2004, Associate Judge Barry Denney denied the City's request for a protective order, holding that the City lacked standing to seek the declaratory judgment.[7]  The lawsuit then proceeded on Shero's counterclaim, and on April 28, 2004, Judge Denney ruled in Shero's favor, finding that the pre-meeting Council packets were public records under the OORA, and that "Only those portions deemed confidential pursuant to the [OORA] may be redacted." *David Earl Shero v. City of Grove*, Case No. CV-2004-57 (Delaware County District Court), *Journal Entry*, ¶ 9, p. 3 (April 28, 2004) [Exhibit "C" to Dkt. # 109].  The Court enjoined the City from denying future requests for "copies of pre-meeting individual City Council Packets and resumes of current City Officials."  *Id.* at ¶ 11. Thereafter, the Court awarded Shero $27,949 in attorney fees.

Shero has alleged that his former employer, Grand Savings Bank, learned of his on-going battles with City Hall and gave him a choice between dropping his claims against the City or losing his job.  Shero continued with his complaints and was terminated from his position with the Bank in February 2004.  On March 11, 2005, Shero filed the instant lawsuit.  On September 20, 2006, this Court dismissed Shero's claims against Defendant Nold for lack of proper service.  [Dkt. # 130, pp. 3-4].  The Court also dismissed Shero's § 1983 claims against the Individual Defendants on grounds of qualified immunity.  [Dkt. # 130, pp. 9-13].

Between May and June 2006 the parties extensively briefed motions for summary judgment.  On November 2, 2006, the Court granted summary judgment in favor of the

---

[7]      City Attorney Parker filed the declaratory judgment action before it was authorized by the City Council; therefore, Judge Denney found that the City lacked standing to prosecute the declaratory judgment action.

4

Defendants on all of Shero's remaining claims, and Defendants then filed their motions for an award of attorney fees as prevailing party defendants.

### *Legal Standard*

The general rule in the United States is that the prevailing litigant is normally not entitled to collect attorney fees from the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Notwithstanding this "American Rule," Congress has adopted "specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." *Id.* at 260. *E.g.,* 15 U.S.C. § 15(a) (antitrust); 35 U.S.C. § 285 (patent); and 15 U.S.C. § 77k(e) (Securities Act of 1933). Much attorney fee litigation has been spawned by the fee-shifting provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5k, and the statute at issue here, the Civil Rights Attorney's Fees Award Act of 1976 ("the Act"), 42 U.S.C. § 1988. The Act provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983… the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs….

42 U.S.C. §1988(b).

In civil rights cases prevailing plaintiffs are awarded attorney fees except in unusual circumstances. *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968) (per curiam) (Prevailing civil rights plaintiffs are entitled to an award of attorney fees "unless special circumstances would render such an award unjust."). Thus, were Shero the prevailing party in this case, there is no doubt that he would be entitled to an award of attorney fees. However, the language of § 1988 is not limited to plaintiffs. The statute permits an award of attorney fees to the "prevailing party," and here Defendants claim

they have prevailed.  Courts have held that under limited circumstances a prevailing *defendant* in certain civil rights cases may also claim entitlement to an award of attorney fees.

In *Christiansburg Garment Co. v.  EEOC*, 434 U.S. 412 (1978), a case brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), the Supreme Court assessed what standard should inform a court's decision to award attorney fees to a successful *defendant*.  The Court held that an award of fees to a prevailing Title VII defendant is appropriate where the underlying action is found to be "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Id.* at 422; *see also E.E.O.C. v. Fruehauf Corp.*, 609 F.2d 434, 436 (10th Cir. 1979), *cert. denied*, 446 U.S. 965 (1980) (recognizing *Christiansburg* standard, while nevertheless vacating fee award to prevailing defendant).  The *Christiansburg* standard has since been applied to claims under §1983.  *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) ("Although arguably a different standard [than *Christiansburg*] might be applied in a civil rights action under 42 U.S.C. § 1983, we can perceive no reason for applying a less stringent standard."); *Prochaska v. Marcoux*, 632 F.2d 848, 854 (10th Cir. 1980), *cert. denied*, 451 U.S. 984 (1981) (applying the *Christiansburg* standard – "clearly 'frivolous, unreasonable or groundless'" – to an action under §1983); *Shaw v. Neece*, 727 F.2d 947, 949-50 (10th Cir.), *cert. denied*, 466 U.S. 976 (1984) (upholding an award of attorney fees based on the Court's finding that the underlying action was "an unreasonable, frivolous action brought under section 1983").  Thus, the applicable standard for determining Defendants' entitlement to an award of attorney fees is the *Christiansburg* test.

Unlike a prevailing civil rights Plaintiff, a prevailing Defendant has a more difficult task in claiming an attorney fee award. *Christiansburg*, 434 U.S. at 418 (noting "strong equitable considerations" favoring fee award to a prevailing plaintiff are "wholly absent" in the case of a prevailing defendant in Title VII case.); *Cobb v. Saturn Land Co.*, 966 F.2d 1334, 1338 (10th Cir. 1992) ("Prevailing [§1983] defendants are not entitled to fees on the same basis as prevailing plaintiffs.") ; *Roger Whitmore's Automotive Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 675 (7th Cir. 2005) (Prevailing defendants seeking fees under § 1988 "have a much harder row to hoe then do prevailing plaintiffs.") A court must resist the temptation to engage in *post hoc* analysis, finding that "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22. As the Supreme Court noted:

> To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and could undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII.

*Id.* at 422.

### *Discussion*

Section 1983 provides a means of redress for the deprivation of one's federal constitutional or statutory rights by a person who is acting under color of state law.[8]

---

[8]   42 U.S.C. §1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

7

Thus, to establish a prima facie case under §1983 Plaintiff must allege two elements:  (1) the action occurred "under color of state law," and (2) the action is a deprivation of a federal constitutional or statutory right.  Karen M. Blum & Kathryn R. Urbonya, *Section 1983 Litigation* 4 (Federal Judicial Center 1998).  Here, there is no dispute that Shero met the first of these requirements.[9]  The critical question is whether Shero's lawsuit presents an arguable basis for alleging a violation of section 1983.

The heart of Shero's claims was his assertion that his First Amendment rights were violated when Grove City officials denied him access to the City Council packets, filed a declaratory judgment action against him in Delaware County District Court seeking a determination that the Council packets were not records covered by the OORA, and limited his speech at City Council meetings. (*First Amended Complaint* ¶¶ 36-39).  Shero also claimed violation of his Fourteenth Amendment due process and equal protection rights; however, these claims rested largely on the viability of his First Amendment contention.

The Court rejected Shero's § 1983 claim insofar as it was based on the City's refusal to give him the pre-meeting City Council information packets, holding that there is no general First or Fourteenth Amendment right to information within the government's control.  *Order and Opinion*, Dkt. # 137, p. 6, citing *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001) and *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)

---

violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[9]  "When a plaintiff sues a governmental entity, such as a city or county, for a constitutional violation arising from its policy or custom, action under color of state law is present because the entity was created by state law." Blum & Urbonya, *supra*, at 6 (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.")). The Court also rejected Shero's due process and equal protection claims that the time limit placed on Shero's speech to the City Council was a reasonable time, place and manner restriction (*Id.* at p. 14, citing *Rowe v. City of Cocoa, Florida*, 358 F.3d 800, 802-03 (11th Cir. 2004)), and that the declaratory judgment action would not chill a person of ordinary firmness from continuing to request a Council packet or appear at Council meetings (*Id.*, p. 11, citing *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004)). Thus, Shero failed the three-pronged test of *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000), *cert. denied*, 533 U.S. 916 (2001), to establish First Amendment liability against a non-employer defendant.[10] The Court further found that Shero had no private right of action for money damages under the OORA and was not entitled to pursue a private right of action under the OOMA. Accordingly, the claims under these statutes that Shero asserted through the Governmental Tort Claims Act were fatally flawed. (Dkt. # 137 at pp. 15-18).

*1. Defendants Are Prevailing Parties.*

In order to qualify for an award of attorney fees as a prevailing party, the Defendants must first show a judicial determination in their favor on the merits. *Easiley v. Norris*, 107 F.Supp.2d 1332, 1339 (N.D.Okla. 2000) (citing *Marquart v. Lodge 837 of*

---

[10] *Worrell* recognized three necessary elements to establish a First Amendment claim against someone other than one's employer: (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Id.* at 1212 (citing *Lackey v. County of Bernalillo*, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999)).

*the Int'l Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842, 852 (8th Cir. 1994). The Defendants are prevailing parties by virtue of the *Order and Opinion* [Dkt. # 130] on Defendants' Motion to Dismiss, the *Opinion and Order* [Dkt. # 137] granting Defendants' Motion for Summary Judgment and the *Judgment* [Dkt. # 138] entered November 2, 2006.

*2. Frivolousness Analysis.*

Since Defendants are prevailing parties, the next step in analyzing their claim for attorney fees under § 1988 is to determine whether Shero's suit was "vexatious, frivolous, or brought to harass or embarrass the defendant." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). Defendants contend that Shero's claims were frivolous. A lawsuit is frivolous if it has "no reasonable basis, whether in fact or in law." *Tarkowski v. Lake County*, 775 F.2d 173, 176 (7th Cir. 1985). In determining whether a lawsuit is frivolous the Court must examine the underlying claims and "delve into, or address, the merits" of the lawsuit. *Crabtree v. Muchmore*, 904 F.2d 1475, 1477-78 (10th Cir. 1990).[11]

A Plaintiff's lawsuit is likely to be found frivolous if:

The case presented an obvious jurisdictional deficiency;
The Plaintiff failed to produce any evidence to support his claims;

---

[11] In *Crabtree* the Court noted that usually a court will be forced to make the determination of frivolousness "on the basis of pleadings, with little other guidance." *Id.* at 1178, n.4. The court "may be unable to tell whether a claim is simply not sufficiently pleaded, therefore meriting dismissal, or additionally, not warranted in fact or law, which might require sanctions as well." The Court further noted:

> We do not mean to require the district courts in such situations to hold evidentiary hearings to prove the background of the suit. But if background information is already available ... the court must consider that in making its determination on a § 1988 fee award....

*Id.*

10

> The claims were clearly barred by unambiguous case law;
> The meritless claims already had been raised and defeated in a prior state court proceeding that clearly was entitled to preclusive effect.

Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation Statutory Attorney's Fees* vol. 2, § 10.2 (3rd ed., Aspen L. & Bus. 1997) (hereafter, "Schwartz & Kirklin") (citations omitted).

Shero's claims are not frivolous under the tests outlined above. First, there was no "obvious jurisdictional deficiency" with the lawsuit. *See for example*, *Werch v. City of Berlin*, 673 F.2d 192, 195 (7th Cir. 1982) (fees assessed against §1983 plaintiff where well-established circuit law mandated dismissal for lack of subject matter jurisdiction), or *Freeman v. Taft Broadcasting Co.*, 1978 WL 91, at \*\*1-2 (N.D.Ala. Mar. 2, 1978) (fees assessed against Title VII plaintiff who filed suit more than 90 days after receiving right to sue letter). Second, Plaintiff produced evidence in support of his claims. Shero offered a great deal of evidence establishing that he was denied the City Council packets and that the Delaware County District Court found that these documents should have been produced to him.[12] Third, for reasons explained more fully below, Shero's claims were not barred by "unambiguous case law." Finally, Shero's claims had not been raised and rejected in a state court action entitled to preclusive effect. *E.g.*, *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985), *cert. denied*, 484 U.S. 918 (1987) (Plaintiff had already unsuccessfully challenged City policy regarding redevelopment projects in state court.).

A losing plaintiff's lawsuit is not likely to be found frivolous if he had "an arguable basis" for pursuing the claim, *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 184

---

[12] The fatal flaw in Shero's claims was not lack of evidence but lack of a viable legal theory to support the evidence.

11

(6th Cir. 1985), *cert. denied*, 473 U.S. 906 (1985). Such an arguable basis might include decisional law supporting the claim, a legal theory premised on an unclear or unsettled area of law, or a material factual dispute. Schwartz & Kirklin §10.2. Key to the Court's ruling granting summary judgment in favor of Defendants was a finding that the First Amendment does not guarantee the press or public a constitutional right of general access to government information. *Houchins,* 438 U.S. at 15. As courts have noted, "[t]he Constitution itself is [not] a Freedom of Information Act," permitting release of government records at the public's request. *Id.* at 14; *U.S. v. Miami University*, 294 F.3d 797, 820 (6th Cir. 2002). Notwithstanding this broad pronouncement, *Houchins* does not resolve whether the claims that Plaintiff asserted herein were frivolous. Critical to Plaintiff's claims was the contention that Shero had a First Amendment right of access to information considered by a legislative body in reaching a deliberative decision.

While *Houchins* supports the general proposition that there is no First Amendment right of access to all information in the government's control, the *Houchins* holding does not provide quite the bright line standard that might first appear. Courts have noted a number of exceptions to the *Houchins* rule. The most significant exception is in the area of judicial criminal proceedings. In *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980), for example, the U.S. Supreme Court recognized a limited right of access to criminal trials "implicit in the guarantees of the First Amendment." *Id.* at 580. Courts have subsequently interpreted this limited right to include various aspects of the criminal process beyond the trial itself. In *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*") the Court held that the public has a First Amendment right of access to voir dire examinations in a criminal trial and in *Press-*

12

*Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"), the Court found a First Amendment right of access to transcripts of adversarial preliminary hearings that occur prior to the criminal trial.  In *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C.Cir. 1991), the Court found the public has a First Amendment right of access to the plea agreement upon which judgment had been entered.  "The first amendment creates a general presumption of access to plea agreements."  *Id.*  These cases make it clear that the *Houchins* rule is not the end of public access/First Amendment analysis – at least not in the context of a criminal trial.

While the Supreme Court does not appear to have expanded the constitutional right of access to information outside the context of a criminal trial, *see Center for Nat. Sec. Studies v. U.S. Dept. of Justice*, 331 F.3d 918, 935 (D.C.Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004), at least two circuits courts have extended the *Richmond Newspapers* analysis to civil trials as well:  *Brown & Williamson Tobacco Corporation v. Federal Trade Commission*, 710 F.2d 1165, 1178 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984) ("The Supreme Court's analysis of the justifications for access to the criminal courtroom apply as well to the civil trial."); *Smith v. United States Dist. Court*, 956 F.2d 647, 650 (7th Cir. 1992) (recognizing right of access in civil proceedings).  Courts have also given serious consideration to extending the right of access to certain administrative proceedings.  *Brown & Williamson*, 710 F.2d at 1181 ("We decline to carve out an exception to the right of access in order to protect the secrecy of an administrative record."); *Society of Prof. Journalists v. Sec'y of Labor*, 616 F.Supp 569, 575-79 (D.Utah 1985) (recognizing constitutional right of access to Mine Safety and Health Administration hearing), *vacated as moot*, 832 F.2d 1180 (10th Cir. 1987), *but see*, *U.S. v.*

*Gonzales*, 150 F.3d 1246, 1255 (10th Cir. 1998), *cert. denied*, 525 U.S. 1129 (1999) (distinguishing access to judicial records from access to administrative records and finding that no First Amendment right of access applies to administrative documents located in the executive branch). It has been argued that administrative records of student disciplinary proceedings should be open to the public. In *United States v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002), the Court rejected this argument, but only after a thorough analysis utilizing the two-step procedure outlined in *Richmond Newspapers*. In short, while courts have been reluctant to extend the right of access much beyond the scope described above, they have treated the argument for extension seriously. Thus, even where courts have rejected a First Amendment access argument, such as Shero made here, such claims have been treated as having an arguable basis under the law. Based on my reading of the extant case law and First Amendment theory, I cannot conclude that asserting a First Amendment right to information on which local public officials based a governmental decision was "clearly frivolous, vexatious or brought for harassment."

Other details of this case also inform that decision. First, the Orders entered by the trial judge are lengthy and detailed – evidence that Shero's arguments required "careful consideration" by the Court. *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980); *Bangerter*, 61 F.3d at 1513 (Even claims dismissed under Fed.R.Civ.P. 12(b)(6) that receive careful consideration "especially as evidenced by lengthy, detailed, and reasoned orders or opinions," are not frivolous.). Second, the trial judge did not label Shero's claims as frivolous or meritless. *Bangerter*, 61 F.3d at 1514 (while the court granted defendants' motion for summary judgment, "it did not at that stage label any of the

14

arguments frivolous."). Finally, nowhere in the voluminous summary judgment briefing did *Defendants* label Shero's claims as frivolous or argue that the Court should reject the claims as groundless. The hundreds of pages of briefing and exhibits submitted by Defendants is evidence that they took seriously the theories propounded by Plaintiff and that these claims required detailed analysis.

Claims that are dismissed for failure to state a claim do not automatically meet the *Christiansburg* standard for an award of fees. *Bangerter*, 61 F.3d at 1513. Nor is a claim frivolous simply because the Court finds it flawed under Fed. R. Civ. P. 56. *Id.* at 1514. The Seventh Circuit has put the matter succinctly: "[A] weak case does not a frivolous case make." *Whitmore's Auto*, 424 F.3d at 676.

A final word is necessary with respect to Defendant Adzigian. Adzigian argues that he was not even a Councilor at the time of the events that Shero complains of and, thus, Shero's claim were clearly frivolous as to him and that Shero knew this at least after Adzigian's deposition. *Christiansburg* permits an award of fees where a plaintiff continues to litigate after it becomes clear that a claim is or has become frivolous. The Court does not believe that the fact that Adzigian did not become a member of the City Council until March 2, 2004, in and of itself renders Shero's claims against him frivolous. Not all of the events that underlie this lawsuit occurred before Adzigian joined the Council. Furthermore, Adzigian did not argue his unique circumstances in either the Motion to Dismiss or Motion for Summary Judgment and never contended the case was frivolous as to him. Finally, after a thorough review of the time records submitted with the Defendants' motion the Court has identified no specific time entries that relate only to Adzigian and his special circumstance. Adzigian offered the same arguments in defense

15

of his conduct as did the other Individual Defendants. Thus, it does not appear that Adzigian suffered any extraordinary cost defending this case.

### *Conclusion*

Based on my review I conclude that there is an insufficient basis for an award of attorney fees to the Defendants, including Adzigian, under 42 U.S.C. §1988. Accordingly, I **RECOMMEND** that the Defendants' Motions for Attorney Fees [Dkt. ## 140 & 144] be **DENIED.**

### **OBJECTIONS**

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED this 9th day of April 2007

_____
Paul J. Cleary
United States Magistrate Judge