**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DAVID EARL SHERO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No: 05-CV-0137-CVE-PJC |
| ) | |
| **CITY OF GROVE, OKLAHOMA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

On April 9, 2007, Magistrate Judge Paul J. Cleary entered a report and recommendation (Dkt. # 163) recommending the denial of Defendants' Motion for Attorney Fees (Dkt. # 140) and the Motion of Defendant Dorothy Parker for Attorney Fees (Dkt. # 144).[1] Defendants have filed an objection (Dkt. ## 164, 165)[2] to the report and recommendation, and request de novo review of the magistrate judge' recommendation to deny their motions for attorney fees under 42 U.S.C. § 1988(b).[3]

---

[1]  Defendant Parker simply adopted the legal arguments raised by the other defendants in their motion for attorney fees. Dkt. ## 144, 158. Therefore, the Court will consider defendants' motions together when reviewing the report and recommendation.

[2]  Defendants' objection was initially docketed as an appeal of the magistrate judge's order, but it was correctly refiled as an objection to the report and recommendation.

[3]  Plaintiff argues that defendants did not comply with the procedural requirements of Fed. R. Civ. P. 11, and their motion for attorney fees should be denied on that basis alone. However, defendants are clear that the legal source of their motion is § 1988(b), not Rule 11, and the magistrate judge did not discuss Rule 11 in his report and recommendation. Thus, the procedural requirements of Rule 11 do not pertain.

## I.

Plaintiff David Earl Shero ("Shero") is a resident of the City of Grove, Oklahoma ("the City"), and he filed a lawsuit against the City and various municipal officials alleging claims under 42 U.S.C § 1983[4] and the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. ("GTCA"). The dispute between Shero and the Grove City Council ("City Council") extends back to 2003, but the relevant facts as to this case are stated in the Court's opinion and order ruling on defendants' motion for summary judgment. Dkt. # 137.

Shero became frustrated by several decisions of the City Council and he regularly began to attend City Council meeting in the Fall of 2003. He frequently spoke at meetings, and voiced his concerns that City Council members were violating the Oklahoma Open Meetings Act, OKLA. STAT. tit. 25, § 301 et seq. ("OOMA"), and the Oklahoma Open Records Act, OKLA. STAT. tit. 51, § 24A.1 ("OORA"). On November 17, 2003, Shero requested a copy of a "council packet" before the meeting. A council packet is an informational packet assembled for each individual council member before a City Council meeting and, in addition to publicly available information such as the meeting agenda, it contained personal notes unique to each council member. Shero's request for a council packet was approved, and he was given the City Clerk, Ivonne Buzzard's ("Buzzard"), personal packet. Shero subsequently requested council packets for the December 1 and December 15, 2003 City Council meetings, and those requests were also approved. After the December 15, 2003 meeting, Buzzard notified the City attorney, Dorothy Parker ("Parker"), about Shero's requests.

---

[4]    Shero's original complaint also alleged violations of 42 U.S.C. §§ 1985 and 1986, but he omitted these claims from his first amended complaint. He subsequently clarified that he intended to abandon those claims.

Parker advised Buzzard to deny any future requests for council packets, because she determined that the packets contained confidential information that should not be disclosed to the public.

Shero asked for a council packet on January 2, 2004, and Buzzard denied Shero's request based on the City attorney's advice. Shero addressed the City Council on January 6, 2004, and stated his belief that the denial of his request for a council packet violated the OORA. He also alleged that the City Council was having closed meetings concerning the City's negotiations for the sale of the Grove Civic Center, which Shero claimed violated the OOMA. Shero requested council packets on January 16 and January 30, 2004, and those requests were denied. He continued to address the City Council about his allegations that the City was violating the OORA, and he believed his statements angered members of the City Council. He also claimed that other citizens received a council packet, and he claimed that his requests were being denied because he wanted a council packet to challenge City policies.[5] At the City Council meeting on January 30, 2004, Shero threatened to file a lawsuit against the City under the OORA, and he claims that Parker verbally attacked him at the meeting.

On February 2, 2004, the City filed a declaratory judgment action against Shero in Delaware County District Court seeking a declaration that Shero had no right to a council packet under the OORA. Shero filed an answer and a counterclaim asserting that his rights under the OORA were violated by the City's actions. The City's claim was dismissed for lack of subject matter jurisdiction

---

[5] Shero noticed that another person picked up a council packet on January 30, 2004, but Shero's request for a council packet was denied. It was later discovered that David Helms ("Helms"), a member of the City Council, sent his wife to pick up his council packet before the meeting.

on February 13, 2004,[6] but Shero was allowed to proceed with his counterclaim. On April 28, 2004, Shero prevailed on his counterclaim. The state court ruled that pre-meeting packets must be disclosed under the OORA, but the City could redact any confidential information contained in the documents. The City was enjoined from denying any future requests for council packets, and the state court awarded Shero $27,949 in attorney fees.

Shero alleges that his employer, Grand Federal Savings Bank ("the Bank"), disapproved of Shero's ongoing legal battles with the City. According to Shero, his employer told him to drop his counterclaim against the City or he would be fired. Shero persisted with his counterclaim, and he alleges that he was terminated in February 2004 in retaliation for protected conduct under the OORA.[7] Shero filed this lawsuit on March 11, 2005, alleging that city officials violated Shero's rights under state and federal law. The Court dismissed Shero's claims against defendant Robert Nold for lack of proper service. Dkt. # 130, at 3-4. Shero's § 1983 claim against individual defendants was dismissed on the ground of qualified immunity, because Shero failed to establish that his claim was supported by clearly established law. Id. at 9-15. On November 2, 2006, the Court entered summary judgment in favor of defendants on the remainder of Shero's claims. Shero could not pursue a § 1983 claim against the City or the City Council, because neither defendant adopted an official policy that violated Shero's constitutional rights. The Court also found that Shero's GTCA claim was barred as a matter of Oklahoma law, because his claim for monetary damages was not cognizable under the OORA or the OOMA.

---

[6]  The City lacked standing to pursue its claim because Parker filed the lawsuit before the City Council held a vote authorizing the lawsuit.

[7]  The Court found that this conduct was irrelevant to Shero's claims in this case, because the bank was not a state actor under § 1983. Dkt. # 137, at 3.

**II.**

The Court must conduct a <u>de novo</u> review of the magistrate judge's report and recommendation. Under 28 U.S.C. § 636(b)(1), the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>See</u> <u>also</u> <u>Northington v. Marin</u>, 102 F.3d 1564, 1570 (10th Cir. 1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations."). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**III.**

The magistrate judge concluded that Shero's lawsuit was not frivolous, and defendants were not entitled to attorney fees under § 1988(b). Defendants object to this conclusion on three separate grounds: (1) Shero's claims were inherently frivolous and the magistrate judge used inapplicable case law to find otherwise; (2) the sheer volume of evidence cited by Shero, instead of suggesting that Shero's claims were well supported, actually highlights the frivolity of Shero's legal claims; and (3) the Court should infer bad faith litigation conduct based on Shero's blatant and repeated misrepresentations of fact and law.[8] The Court has conducted a <u>de novo</u> review and finds as follows:

---

[8]  Defendants' objection to the magistrate judge's report and recommendation includes many factual references and legal arguments that were not provided to the magistrate judge. Objections to a report and recommendation should not be treated as a second bite at the apple, and arguments not raised before the magistrate judge are deemed waived. <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections

5

**A.**

Under a well-established principle of American jurisprudence, the prevailing litigant in a civil case is not ordinarily entitled to attorney fees from the losing party. Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co., 470 F.3d 947, 953 (10th Cir. 2006); FTC v. Kuykendall, 466 F.3d 1149, 1152 (10th Cir. 2006). However, Congress has enacted a specific statute governing the award of attorney fees in § 1983 actions. Roth v. Green, 466 F.3d 1179, 1994 (10th Cir. 2006). Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." The Supreme Court has recognized that one of the primary purposes of § 1988(b) was to encourage private citizens to bring civil lawsuits to enforce their constitutional rights, because the cost of pursuing a legal action would be prohibitive for many citizens. Newman v. Piggie Park Ent., Inc., 390 U.S. 400, 402 (1968).

The statute does not distinguish between the prevailing plaintiff or defendant, but § 1988(b) was initially applied in favor of the prevailing plaintiff only. Albermarle Paper Co. v. Moody, 422 U.S. 405 (1975). However, the plain language of the statute shows that it applies to plaintiffs and defendants, but different standards apply depending on who prevails. The successful plaintiff should ordinarily be permitted to recover attorney fees in a § 1983 action "unless special circumstances would render such an award unjust." Northcross v. Board of Educ. of Memphis City Schools, 412 U.S. 427, 428 (1973). When a defendant prevails in a case falling within § 1988(b), "a plaintiff

---

to the magistrate judge's recommendation are deemed waived."). The Court will consider the specific objections to magistrate judge's report and recommendation, but will base its decision only on arguments raised before the magistrate judge.

should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). If the court finds that plaintiff brought his claim in bad faith, this provides a stronger basis to award attorney fees under the statute. Id. The fact that a plaintiff eventually loses his case does not, without something else, provide a justification for awarding attorney fees to the defendant. Hughes v. Rowe, 449 U.S. 5, 14 (1980). The Tenth Circuit has been clear the Christianburg standard is a "difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." Mitchell v. City of Moore, Oklahoma, 218 F3d 1190, 1203 (10th Cir. 2000). Defendants must satisfy this high standard to show that Shero's claims were patently frivolous and vexatious, and equitable considerations will normally require a court to deny a defendant's motion for attorney fees in civil rights case. United States ex rel. Grynberg v. Praxair, Inc., 389 F.3d 1038, 1058 n.22 (10th Cir. 2004).

**B.**

Defendants argue that the magistrate judge relied on inapplicable case law when he determined that plaintiff's legal claims were not "vexatious, frivolous, or brought to harass or embarrass the defendant." Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995). The magistrate judge stated that a lawsuit is frivolous if it has "no reasonable basis, whether in fact or in law." Dkt. # 163, at 10 (quoting Tarkowski v. Lake County, 775 F.2d 173, 176 (7th Cir. 1985)). He correctly noted that a court must "delve into, or addresss, the merits of the claims" asserted to determine whether an action is frivolous. Crabtreee v. Muchmore, 904 F.2d 1475, 1478 (10th Cir. 1990). In his frivolousness analysis, the magistrate judge cited three cases that defendants claim are

7

inapplicable to plaintiff's claims: (1) Richmond Newspapers v. Virginia, 448 U.S. 555 (1980); (2) Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165 (6th Cir. 1983); and (3) Smith v. United States Dist. Court, 956 F.2d 647 (7th Cir. 1992).  Plaintiff does not address this argument in his response.

When this Court ruled on defendants' motion for summary judgment, the Court cited Houchins v. KQED, Inc., 438 U.S. 1 (1978), and Smith v. Plati, 258 F.3d 1167 (10th Cir. 2001), for the general principle that the First Amendment does not provide an absolute right of access to information within the government's control.  Dkt. # 137, at 6.  The three cases cited by the magistrate judge concern the public's right of access to judicial proceedings and records, and he used them to show that there certain recognized exceptions to the general rule stated by this Court.[9]  Contrary to defendants' assertions, the magistrate judge did not rely solely on these cases to suggest that plaintiff's claims had merit, but he showed that Courts have recognized a limited First Amendment right to access information under some circumstances.

For example, in Richmond Newspapers, the Supreme Court recognized that the media has the same right as the general public to attend a criminal trial.  Richmond Newspapers, 448 U.S. at 573-74.  This decision was based on the Sixth Amendment's guarantee of a speedy and public trial, as well as a right of news media to gather information under the First Amendment.  Id. at 576. Although the Supreme Court's holding was limited to the media's right to attend criminal trials, the

---

[9] Defendants are correct that the Court did not cite these cases when ruling on defendants' motions, but that does not automatically make the cases irrelevant to a determination that plaintiff's legal claims were frivolous.  When the Court ruled on dispositive motions, the Court's concern was whether plaintiff successfully presented a claim for relief, not whether Shero's claims were completely lacking in foundation.  As these are separate issues, the Court can consider additional legal authority not previously relied upon by the parties when determining if Shero's claims are frivolous under Christianburg.

8

Court used language implying that the First Amendment provides a broader right to gather information when certain information has traditionally been available to the public. Id. at 577 ("The right of access to places traditionally open to the public . . . may be seen as assured by the amalgam of the First Amendment guarantees of speech and press; and their affinity to the right of assembly is not without relevance."). The magistrate judge noted that, in Brown & Williamson Tobacco Corp. and Smith v. United States District Court, the Sixth Circuit and the Seventh Circuit recognized that the right recognized in Richmond Newspapers extends to civil cases in some circumstances. See Smith, 956 F.2d at 650-51 (court records are generally available to the public but district courts have the discretion to limit access to confidential information); Brown & Williamson Tobacco Corp., 710 F.2d at 1180-81 (recognizing a public right to obtain court records, including records of administrative proceedings, unless there is a compelling need for secrecy).

Richmond Newspapers and its progeny are not directly on point for Shero's claims, nor did the magistrate judge did suggest any such thing. The magistrate judge was following the Tenth Circuit's mandate in Crabtree to delve into the merits of plaintiff's claim, as evidenced by the following excerpt from the report and recommendation:

> In short, while courts have been reluctant to extend the right of access much beyond the scope described above, they have treated the argument for extension seriously. Thus, even where courts have rejected a First Amendment access argument, such as Shero made here, such claims have been treated as having an arguable basis under the law. Based on my reading of the extant case law and First Amendment theory, I cannot conclude that asserting a First Amendment right to information on which local public officials based a governmental decision was "clearly frivolous, vexatious or brought for harassment."

Dkt. # 163, at 14. The magistrate judge conducted a thorough analysis of the applicable law, and he did not rely on an erroneous legal standard when he concluded that plaintiff's claims were arguably based on a good faith request for an extension of existing First Amendment jurisprudence.

9

This Court agrees that Shero's claim for access to pre-meeting council packets, while not sufficient to warrant him relief, was not so baseless that the Court can label his claim as frivolous or vexatious. Defendants' objection is denied, and the Court will accept the magistrate judge's finding that Shero's access to information claim was not frivolous under the Christianburg standard.

**C.**

Defendants argue that the Court's "lengthy and detailed" opinions are not evidence that Shero's claims had merit but, quite to the contrary, are evidence that Shero persisted with several frivolous claims. Even if Shero's First Amendment access to information claim was not patently frivolous, they assert that Shero persisted to litigate other claims that were meritless. Citing Dodd Insurance Services, Inc. v. Royal Insurance Company of America, 935 F.2d 1152 (10th Cir. 1991), defendants argue that the Court has the authority to sanction plaintiff when his complaint includes frivolous and non-frivolous claims. Id. at 1158. Plaintiff does not directly address defendants' argument, but plaintiff suggests that defendants are misinterpreting facts to show that at least some of Shero's claims are frivolous.

The magistrate judge properly considered the lengthy and detailed opinions of this Court as evidence that Shero's claims merited careful consideration. In Hughes, the Supreme Court noted that the mere fact a claim is eventually denied should not be used in hindsight to find that a plaintiff's claim was frivolous:

> Despite the lower court's conclusion to the contrary, the allegations of petitioner's amended complaint are definitely not meritless in the *Christianburg* sense. Even those allegations that were properly dismissed for failure to state a claim deserved and received the careful consideration of both the District Court and the Court of Appeals. Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christianburg*.

10

Hughes, 449 U.S. at 15-16 (internal citations omitted); see also Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 230 (1st Cir. 2004) (finding that plaintiff's complaint should have been dismissed for failure to state a claim but, due to the unclear state of the law, his claims deserved close consideration and were not frivolous); Jane L., 61 F.3d at 1513 ("Those claims dismissed on 12(b)(6) motions that receive 'careful consideration,' especially as evidenced by lengthy, detailed, and reasoned orders or opinions, are not 'groundless' or 'without foundation.'"). The Court has already found that Shero's First Amendment claim was not frivolous to the extent that he sought information in the control of a governmental entity, as such claims almost always require close judicial scrutiny.

Defendants argue that they were required to brief many irrelevant issues because of the poor quality of the pleadings and written motions filed by plaintiff, and a closer review of plaintiff's claims led to summary judgement against plaintiff on all of his claims. They argue that the report and recommendation "appears to penalize the Defendants for their thoroughness in responding to a litany of allegations that Shero refused to define beyond the vagaries of his Complaint," including: (1) defendants believed that they were required to analyze plaintiff's First Amendment claim as a claim under the Oklahoma Constitution; (2) plaintiff mentioned the right to petition his government as a basis for relief, but did not provide clear facts to support this claim; (3) plaintiff refused to clarify his claim for declaratory relief; (4) plaintiff made vague allegations that the City's decision to file a declaratory judgment action in state court violated his due process rights; (5) "out of an abundance of caution" defendants briefed an entire section on substantive due process even though plaintiff did not clearly raise this issue; and (6) plaintiff's first amended complaint mentions a prior restraint on speech, but he failed to connect this allegation to any facts in the complaint. Dkt. # 164,

at 21. Defendants also claim that they devoted four pages of summary judgment briefing to Shero's argument that the Noerr-Pennington doctrine provided him immunity while he was petitioning the City Council, but the Court disposed of this argument in a footnote.

Most of defendants' allegations are simply complaints about the legal and factual arguments raised by plaintiff. Although defendants filed lengthy dispositive motions in an attempt to deal with every claim raised by plaintiff, this does not mean that plaintiff's claims for relief were frivolous. Most of the statements cited by defendants to prove the frivolous nature of plaintiff's claims are statements from defendants' motion for summary judgment, but they do not cite any statements by the Court suggesting that it found Shero's claims to be frivolous. Defendants were frustrated by the failure of Shero's attorney to clearly identify plaintiff's legal theories, but they have not shown, based on the undisputed facts, that Shero's claims were frivolous.[10] Defendants successfully defended against Shero's lawsuit; however, the Court is reluctant to engage in a post-hoc review of facts and arguments the Court did not need to address in its previous opinions and orders. The Court entered extensive orders disposing of plaintiff's claims and, as the magistrate judge observed, the Court did not make any findings that plaintiff's claims were frivolous nor did defendants ask the Court to make such a finding. See Dkt. # 163, at 14-15. The lengthy and detailed orders of the Court support plaintiff's contention that his claims were not frivolous, and the magistrate judge did not err

---

[10] In the briefing on defendants' motion for attorney fees, defendants claim that Shero acknowledged he could have obtained the same information under the OORA but not in the form of a pre-meeting council packet. Shero told Parker that he believed his requests for information would be denied regardless of what form the information was packaged. However, he ignored the substance of Parker's question and provided an evasive response. The Court did not rely on these facts in its opinion and orders, and there is no need for the Court to resolve immaterial factual disputes after summary judgment has already been granted.

by considering this as relevant evidence to recommend denial of defendants' motions for attorney fees. See Jane L., 61 F.3d at 1513. Plaintiff's counsel should have been clearer about the substance of Shero's claims. However, without more, this does not justify punishing the plaintiff by forcing him to pay defendants' attorney fees when defendants have not shown that Shero's claims were clearly frivolous.

**D.**

Defendants ask the Court to infer that Shero filed his lawsuit in bad faith, even though defendants admit they do not have direct evidence to support this conclusion. Defendants assert that David Adzigian was not a member of the City Council until March 2, 2004, and many of the events giving rise to plaintiff's claims occurred before that date. They argue that Shero attempted to impose § 1983 liability on defendants for actions taken by Shero's employer, the Bank, but he presented no evidence that the Bank was a state actor. Finally, defendants argue that Shero filed this lawsuit with the intent to harass City officials for denying his requests for information. Defendants provide a detailed list of the alleged flaws with Shero's claims, and suggest that Shero acted in bad faith by continuing to litigate the following claims: (1) a First Amendment right to information in a "specific format;" (2) claims litigated in the state court declaratory judgment action that were barred by res judicata; (3) the OORA and the OOMA claims when there is no private right of action; (4) claims for money damages against the City Council and its members barred by Monell v. Department of Social Services, 436 U.S. 658 (1978); (5) plaintiff's reliance on state law to show violation of clearly established constitutional rights; (6) claim against Adzigian once it became clear there was no factual basis for the claim; and (7) claim against the City Council for defending against Shero's OORA counterclaim in state court. Dkt. # 164, at 22-23.

13

The Court does not find any mention of a defense specifically based on Adzigian's status in defendants' motion to dismiss or their motion for summary judgment.[11] Even if Shero was aware of the fact that Adzigian was not appointed to the City Council until March 2, 2004, defendants did not rely on this fact as a basis for dismissal or summary judgment. In addition, this fact would not automatically make Shero's claim against Adzigian frivolous. The Court previously stated that Shero's GTCA claims could not have been litigated in the state court declaratory judgment action, because Shero did not have sufficient time to comply with the notice procedures of the GTCA. Dkt. # 130, at 8. Some of the facts stated in Shero's first amended complaint occurred after March 2, 2004, and there was arguably some basis for him to assert claims against Adzigian in his capacity as a council member.[12] In any event, the Court is reluctant to review the merits of a defense that was raised for the first time in a post-trial motion for attorney fees, and this does not provide a basis for the Court to conclude that Shero's claims against Adzigian were litigated in bad faith.

Defendants characterize Shero's First Amendment retaliation claim as unreasonable, because they argue Shero was attempting to hold defendants liable for actions taken by Shero's employer, the Bank. This argument was not presented to the magistrate judge and the Court finds that it is waived. See Marshall, 75 F.3d at 1426. Even if the Court were to consider the merits of defendants'

---

[11] In response to plaintiff's motion for summary judgment, defendants stated in a footnote that "David Adzigian was not even on the City Council at the time, yet Shero refuses to dismiss him from this litigation despite notice and a reasonable time in which to dismiss the claim." Dkt. # 108, at 26 n.4. However, it is clear that defendants did not raise this issue in either of their dispositive motions.

[12] For example, Shero made a written request on March 2, 2004, for information from the City concerning offers to purchase the Grove Civic Center. On March 16, Shero addressed the City Council and he objected to a 3 minute time limitation on his speech at meetings. Shero also claimed that he was pressured to quit his job at the Bank during the first half of 2004.

argument, the Court would not find that this assertion supports an award of attorney fees for defendants. There is no dispute that Shero's employer was a private company, not a state actor, and there was no basis for liability against the City Council for actions taken by a private party. Dkt. # 137, at 3 n.4. However, defendants' argument is somewhat misleading. Although Shero could not use § 1983 to assert liability against defendants for actions taken by a private party, the heart of his allegations were that the declaratory judgment action instituted by the City was intended to chill his First Amendment right of free speech. It does not appear that Shero pursued a claim for relief based solely on the Bank's actions, but he used this allegation to support his claim that a reasonable person would have been chilled from voicing his opposition to the City Council. It also does not appear that defendants were put to any great expense to defend against this aspect of Shero's claim. Therefore, defendants' argument would not support an award for attorney fees.

Defendants assert that Shero continued to litigate claims against all defendants without ever attempting to discover information to support those claims. They claim that Shero filed claims against defendants Helms, Randy Jobe, and Charles Rowe without making any specific factual allegations against them, and he never pursued discovery for his claims against these defendants. Defendants also complain that "even Shero's litigation conduct carried an obstinate and obdurate tone reflecting his vexatious pursuit of City officials." Dkt. # 164, at 21. While defendants may have been dissatisfied with the manner in which Shero prosecuted his claims, these allegations are not sufficient for the Court to infer that plaintiff acted in bad faith. The Court is reluctant to infer that a party acted in bad faith, as the Tenth Circuit has issued a clear mandate that only "rare circumstances . . . warrant an award of attorneys' fees to the defendant" under § 1988(b). Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1581 (10th Cir. 1995). As the magistrate judge stated, "[t]he

15

dispute between Shero and the City of Grove features roots that run deep and emotions that run high." Dkt. # 163, at 2. In such cases, the parties are bound to have heated disagreements, and the Court should not infer bad faith litigation conduct because Shero refused to dismiss certain claims or disputed legal arguments that defendants believed were clear and unambiguous. See Figures v. Board of Public Utilities of City of Kansas City, Kansas, 967 F.2d 357, 362 (10th Cir. 1992).

The Court finds no basis to infer that Shero acted in bad faith by continuing to litigate his civil rights claims against City officials. This was an emotionally charged case and, although defendants believed their legal position was unassailable, plaintiff did not simply have to accept the facts and law as stated by defendants. Although plaintiff pursued some questionable legal theories, defendants have not shown that his claims were so unreasonable that the Court should infer bad faith. Therefore, the magistrate correctly found that Shero did not prosecute his claims in bad faith.

**IV.**

The Court has conducted a de novo review of the record and the report and recommendation, and finds that the report and recommendation should be accepted without modification. For the Court to grant defendants' motions for attorneys fees, the Court would have to accept defendants' fundamental premise that this is really a dispute over Shero's First Amendment right to information in a "particular format," but that Shero was never denied any substantive information within the City's control. Dkt. # 164, at 1. The Court did not characterize Shero's claims so narrowly in its previous opinions and orders, and it will not do so now. Although the Court disposed of Shero's claims through summary judgment, Shero has shown that he had a colorable legal basis for filing his lawsuit. Therefore, his claims were not frivolous under the Christianburg standard and defendants are not entitled to attorney fees for defending against Shero's claims.

16

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 163) is **accepted**, and Defendants' Motion for Attorney Fees (Dkt. # 140) and the Motion of Defendant Dorothy Parker for Attorney Fees (Dkt. # 144) are **denied**.

**DATED** this 29th day of May, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT